[No. 5466.]

[No. 3136 C. A.]

Downey et al. v. The Twin Lakes Land and Water Company.

1.   Water Rights—Water Companies—Rights, Duties and Liabilities.

The measure of the rights, duties and liabilities of a water company and the water consumers, is to be found in the statutes of the state and in the contract, and not in the rules of the company.—P. 390.

2.   Same.

A water company conveyed water rights by deed, stipulating that the grantee might relocate the rights, provided that location could be made on land lying nearer the headgate of the main canal, and without detriment to, or any liability of, the company. A third person acquired a half of an 80-acre water right, and his land was lying nearer the headgate of the main canal than any of the land which had theretofore been irrigated with water obtained upon this right, and could not be irrigated by water taken from the main canal through any existing headgate. Held, that he was entitled to a headgate over the objection that a multiplicity of headgates weakened the canal and increased the expense of maintaining it, since the detriment or liability mentioned in the contract meant detriment or liability out of the ordinary; and that he was also entitled to such headgate under Mills' Ann. Stats., § 2288, requiring owners of any canal used for irrigating purposes to construct the necessary outlets for a proper delivery of the water to persons having right to the use thereof.—P. 390.

3.   Same.

Where it is practicable for two or more consumers to draw water from a canal for the irrigation of their lands through one headgate, that may be done; but where a water consumer cannot thus obtain water, he is entitled, under Mills' Ann. Stats., § 2288, to compel a water company to construct a necessary headgate at the expense of the water consumer.—P. 392.

*Appeal from the District Court of Otero County.*

*Hon. John H. Voorhees, Judge.*

Action by The Twin Lakes Land and Water

Company against T. Ed. Downey and A. Hard. From a judgment for plaintiff, defendants appeal.

*Reversed and remanded.*

Mr. Fred A. Sabin, for appellants.

Messrs. Hartman & Ballreich, for appellee.

Mr. Justice Bailey delivered the opinion of the court:

This action was brought by the appellee, plaintiff below, to restrain the appellants from cutting the bank of the plaintiff's canal for the purpose of withdrawing water therefrom. Defendants answered that on the date of the filing of the complaint, namely, April 16th, 1904, they had commenced the work of putting in a headgate on the bank of the canal, and by way of a cross-complaint alleged that they are the joint owners of one-half of a water right, being sufficient and intended to irrigate forty acres of land lying under the canal; that said water right was procured for the purpose of irrigating the southwest quarter of the northeast quarter of section 11, township 21 south, of range 58 west; that prior to the 16th of April defendants had repeatedly demanded of the plaintiff's superintendent and general manager that the headgate be so placed and located in the bank of the canal as to permit the drawing of water therefrom under said water right for the irrigation of said land; that the superintendent refused to permit this headgate to be located upon the ditch, for the reason, as alleged by him, that, under the rules and regulations of the plaintiff company, defendants were not entitled to have a headgate for any amount of water less than a full water right, sufficient for eighty acres. Defendants asked for a writ of injunction restraining the plaintiff from preventing the defendants from drawing from the canal the water

to which they were entitled by reason of the ownership of said half water right, for the irrigation of the land hereinbefore described.   The plaintiff replied and, *inter alia,* alleged:

"That among other regulations of the plaintiff company there long has been, and still is, one to the effect that a new or independent lateral headgate would not be placed in said canal or be permitted for a fractional water right only; or, in other words, for less than one full eighty-acre water right."

From the testimony it appears that The Colorado Land and Water Company, the predecessor of plaintiff, made a deed to The Boston Farm Company, granting to the last named party $37\frac{1}{2}$ water rights, each water right representing 1/833 part or fraction of the carrying capacity of the canal.   This deed contains the following provisions:

"The headgates, flumes, weirs or other arrangements through which the water hereby sold shall be drawn off from the company's canal shall be made and placed in position by said party of the first part (the grantor), but at the cost of the second party, who shall also be liable for the expense of keeping the same in good repair and condition."   And, again:

"The party of the second part, its assigns or successors, shall be entitled to use or relocate the water right or water the use of which is herein conveyed, upon any other lands under the line of said company's canal to which land a water right is not already attached; providing such relocation can be made upon land lying nearer the headgate of the main canal and without detriment, expense or the incurment of any liability whatever by the said first party."

The Boston Farm Company sold a portion of the water rights obtained by it to W. L. Hartman and A. L. Widdick, who conveyed to William Waugh one

eighty-acre water right, and Waugh conveyed half of an eighty-acre water right to these defendants, the last mentioned right being the one in dispute.

The land upon which defendants desired to apply the water was land lying nearer the headgate of the main canal than any of the land which had theretofore been irrigated by means of this water, and this land could not be irrigated by water taken from the main canal through any existing headgate. The first headgate below the point where it was desired to locate the new one was three-fourths of a mile distant, and the one above was a mile and a half distant. These were the headgates nearest to the land in question.

At the time of the purchase of the water right, namely, in January, 1904, the defendants appeared at the office of the company in Ordway, Colorado, and applied to the assistant secretary, who was in charge of the office, to have the place of use of the water transferred to this land in section 11. The assistant secretary made a memorandum upon one of the books of the company, and was then asked by one of the defendants if that was all that was necessary in making the transfer, and was informed that it was. In April, 1904, the defendants applied to the general superintendent of the company to have a headgate put in for their convenience in drawing this water from the canal. The superintendent informed them that he would not do this or suffer it to be done unless defendants would purchase another half water right or have some person else who owned at least a half water right draw his water from the same headgate, because it was against the policy of the company to maintain a headgate through which less than one full water right was drawn. Defendants were unable to purchase an additional half water right, and were likewise unable to find any person who was will-

ing to draw his water through the same headgate. Under these conditions the defendants commenced the work of putting in a headgate, and this action was commenced by plaintiff, as above stated.

There was no pretense made by the plaintiff that the defendants could irrigate their land with water drawn from any existing headgate. It relied upon the assertion alleged in its replication, that is: "That among other regulations of the plaintiff company there long has been, and still is, one to the effect that a new or independent lateral headgate could not be placed in said canal or be permitted for a fractional water right only." There is no proof in the record of any such regulation. The only testimony tending to establish it is the following, given by Mr. Allen, the assistant secretary:

"I got orders from Mr. Hartman not to consider or even make request for a headgate unless a man had a full water right. We have refused to put in headgates for fractional water rights." And that given by Mr. Hartman, the general attorney, vice-president and general manager of plaintiff company, who·testified:

"We do transfer fractional water rights where it can be used through the existing headgate, but not where it requires a new headgate.   *   *   *"

By the court: "Have you a rule or by-law of the water company in regard to the matter of head-gates?   A.—I do not know.

Q.—"Being limited to one water right?   A.— I don't know whether there is a rule or by-law, because I am not familiar with the record books of the Land and Water Company, only the present one. The old ones were kept in Buffalo. I have reason to believe there is such a rule. I don't know of my own personal knowledge. The officers and directors of the company understand it so and concur in

this regulation and its enforcement. If there is such a rule I will produce it later.''

Later the plaintiff introduced in evidence, over the objection of defendants, a resolution adopted by the board of directors in Buffalo, New York, on the 12th of May, 1904, prohibiting the placing of any lateral headgates in the canal for less than an eighty-acre water right. This resolution was adopted by the board of directors during the trial of this action, and was, therefore, immaterial as affecting the present controversy. So, it is seen that the only rule or regulation in relation to this matter previous to the commencement of this suit was one promulgated by the general counsel, vice-president and general manager, and not by the corporation itself. However, in the view that we take of the matter, it is immaterial whether the rule finally adopted by the company was made before or after the bringing of this action. The measure of the rights, duties and liabilities of the ditch company and the water consumers is to be found in the statutes of the state and the contract, and not elsewhere. The contract provides that the water may be used ''upon any other lands along the line of said company's canal to which land a water right is not already attached; providing such relocation can be made upon land lying nearer the headgate of the main canal and without detriment, expense or the incurment of any liability whatever by the first party.'' These conditions are all complied with, but the plaintiff says that a multiplicity of headgates tends to weaken the canal, increases the expense of maintaining and operating it, and hence comes within the condition of the contract, that the change shall be without detriment, expense or the incurment of any liability to the first party. The detriment, expense or incurment of liability, as mentioned in the contract, means some detriment, ex-

pense or liability out of the ordinary, not those which are necessarily incident to the erection and maintenance of a headgate; because, if the contract should be construed as allowing the location of new headgates only in such cases as the company would be absolutely free from any detriment, expense or liability, there could be no change at all. It is at once apparent, if the theory of plaintiff be true, that each additional headgate creates an additional liability and expense for the reason that, while the ditch rider could regulate the amount of water flowing through one headgate in a moment of time, each additional headgate increases the time expended in regulating it, pro rata. If the location of a headgate for half a water right tends to weaken the ditch so that it will be more liable to break, the location of a headgate for a dozen water rights would likewise tend to weaken it. If the plaintiff was justified in refusing to locate a headgate because it increased the expense of operating the canal, it would be justified in doing so, no matter what amount of water it was contemplated to carry through a new headgate.

The plaintiff says that if one man is entitled to have a headgate for half a water right, every man on the canal would likewise be entitled to a headgate for half a water right, and that the company has the inherent right to limit the headgates to be placed in the canal to those drawing a fixed amount of water, which it designated as being one full water right. It is contended by the plaintiff that if a man with half a water right can demand a headgate, so can one with one-fourth or one-eighth or one-sixteenth of a water right. The answer to this is that if a company has the power to say that it will not permit a headgate to be placed in a canal for less than a full water right, it would have the same power to say that it would not permit the erection of one for less than two

or four or eight or ten water rights; but, fortunately
the legislature has seen fit to adopt a rule which must
be controlling in cases of this character. In the Ses-
sion Laws of 1887, 305, sec. 2, it is provided:

"The owners and persons in control of any canal
*   *   * used for irrigating purposes shall maintain
the same in good order and repair *   *   * and
shall construct the necessary outlets in the banks of
the canal or ditch for a proper delivery of the water
to persons *   *   * who have rights to the use of
water; provided, however, that a multiplicity of out-
lets in the canal or ditch shall at all times be avoided
so far as the same shall be reasonably practicable
*   *   *."—§ 2279 Mills' Ann. Stats.

It is readily seen from this section that it is the
duty of the ditch company to furnish headgates for
those having a right to use the water. The statute
authorized the regulation of the distribution of water,
but it does not authorize a company to arbitrarily
refuse to deliver water at all. The company must
construct the necessary outlets for the proper deliv-
ery of the water; but, foreseeing the very difficulty
which plaintiff complains of, the legislature specified
that a multiplicity of outlets in the canal must at all
times be avoided so far as the same shall be reason-
ably practicable. That is, where it is practicable for
two or more consumers to draw water from a canal
for the irrigation of their lands through one head-
gate, that may be done; but, under this statute, where
a water consumer finds himself in the predicament
that these defendants are, namely, so situated that
they may not irrigate their lands with water taken
from headgates used by others, then it is the duty of
the company to construct such headgates at the ex-
pense of the water consumer. The court erred in de-
termining that the company could prohibit the con-
struction of headgates for the purpose of withdraw-

ing less than one full water right from the canal, and
in enjoining defendants from constructing the head-
gate in question.

The judgment will, therefore, be reversed and the
cause remanded with instructions to enter judgment
in favor of appellants according to the prayer of their
cross-complaint.        *Reversed and remanded.*

Chief Justice Steele and Mr. Justice Goddard
concur.